UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HUNT and
CAROL SANTANGELO,

                Plaintiffs,                          Case Number 14-10713
                                                          Honorable David M. Lawson

v.

DONNELLY HADDEN, and
DONNELLY W. HADDEN, P.C.,

                Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT, AND DENYING DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT AND MOTION *IN LIMINE***

        The plaintiffs have sued their former lawyer and his professional corporation alleging legal malpractice. The matter is in this Court under diversity jurisdiction. The malpractice claim is based on the defendants' advice to the plaintiff to sign a broad release, by which they unwittingly surrendered a potentially valuable claim against additional tortfeasors. The conversion claim arises from the defendants' retention of excess attorney's fees, which failed to account for the payment of litigation expenses to determine the net recovery from which the contingent fee should have been calculated. The plaintiffs filed a motion for partial summary judgment, on which the Court heard oral argument on January 12, 2015. Since then, the parties have asked to file — and did file — supplemental briefs, the defendants filed a motion for partial summary judgment of their own, and the plaintiffs have moved for leave to file a second amended complaint. It appears that the plaintiffs have abandoned their malpractice claim and seek relief on the conversion counts only. On the conversion claims, there is no genuine issue of material fact, and the plaintiffs are entitled to a

judgment as a matter of law on liability and damages, but not treble damages, which must be decided by the fact finder.  The plaintiffs' request to file a second amended complaint is moot, as is the defendants' motion for partial summary judgment and their motion *in limine*.

I.

Plaintiffs C. David Hunt, a medical doctor, and his wife, Carol Santangelo, an attorney, leased a condominium near Marquette, Michigan from Robert and Amy Armstrong ("the Armstrongs") in early 2007.  Dr. Hunt and Ms. Santangelo moved there from New Jersey after Marquette General Hospital hired Dr. Hunt as a neurosurgeon.  Shortly after his relocation, Hunt began experiencing memory problems, cognitive dysfunction, and trouble balancing, which interfered with his responsibilities as a neurosurgeon.  On May 29, 2007, Hunt felt so disoriented during an operation that he removed himself and called for a replacement surgeon.  The situation triggered a peer review investigation and a temporary suspension of Hunt's surgical privileges.  In June 2007, Hunt voluntarily resigned and forfeited his staff privileges at the hospital because his symptoms showed no signs of improvement.

Dr. Hunt soon learned that he was suffering from prolonged exposure to toxic fumes that had been circulating throughout the condominium.  Hunt later discovered that the condominium never received a final certificate of occupancy (COO) because the water heater, fireplace, and furnace intake vents and exhaust vents were located too closely to each other.  That caused contaminated, toxic air to re-circulate into the condominium.  Dr. Hunt's exposure to the toxins left him permanently disabled and unable to work.

On October 19, 2007, the plaintiffs hired Donnelly W. Hadden, a Washtenaw County, Michigan lawyer, to file a lawsuit against the persons responsible for Hunt's exposure to the toxins.

-2-

The fee agreement, signed the same day, entitled Hadden to a contingent fee based on "33% of the *net sum* recovered from the defendants(s) . . . after all reasonable and necessary advances, costs and expenses . . . Fee in no event to be greater than authorized by court rule."  (Emphasis added).

In February 2009, Hadden filed a federal lawsuit against the owners of the condominium, Robert and Amy Armstrong, and the condominium association, Harbor Ridge Townhouse Condominium Association ("Condominium Association").  *Hunt v. Armstrong*, Case No. 2:09-cv-0038 ("Lawsuit I").  It appears that Dr. Hunt paid a significant portion of the costs of the suit on an ongoing basis.

In February or March 2010, Hadden settled the lawsuit against the condominium association for $42,000.  Hadden kept a fee equal to one-third of the gross settlement amount — $14,000 — without first deducting costs and expenses, as required by the retainer agreement and Michigan's Rules of Professional Conduct.  Hadden acknowledged that the amount of costs incurred were $14,181.78, of which the plaintiffs advanced $13,078.76.  Hadden contends that the plaintiffs' advance was repaid, and the plaintiffs have not disputed that.  Nonetheless, it is clear that the fee Hadden retained was excessive because it was based on the *gross* recovery, not the *net* recovery.

In June 2010, the plaintiffs settled the case with the Armstrongs for $21,000.  Hadden retained one-third of the gross settlement amount or $7,000.  The plaintiffs contend that Hadden converted $5,665.85 in excess fees because Hadden failed to account for costs before calculating his fees.  The defendants disagree, asserting that Hadden expended *no* additional costs settling the case with the Armstrongs and therefore the gross and net settlement amounts are identical.

As part of the settlement, the plaintiffs executed a release.  The release stated that the plaintiffs

>release and forever discharge Robert Armstrong and Amy Armstrong *and any and all other persons, firms or corporations charged or chargeable with responsibility of liability, their heirs, representatives, or assigns*, from any and all claims, demands, damages, costs, expenses, loss of services, actions or causes of actions arising out of any act or occurrence up to the present time and particularly on account of all personal injury, disability, property damage, diminution in value, loss of damages of any kind, which have been sustained or that we may hereafter sustain in consequence of the lease of a condominium unit and associated property located at 235 North Lakeshore Blvd, Marquette, Michigan.

Amend. Compl. ¶ 36, Page ID 41-42 (emphasis added).

Despite the language of the release, on December 6, 2010, Hadden filed a lawsuit in Marquette County, Michigan circuit court against the developer, the builder, and the HVAC contractor. Predictably, the defendants answered the lawsuit by including as an affirmative defense that the release barred the plaintiffs' claims. The trial court agreed and summarily dismissed the case based on the broad language of the release. The Michigan Court of Appeals affirmed on October 23, 2012 in an unpublished decision. The Michigan Supreme Court denied leave to appeal on April 26, 2013, marking the end of the parties formal attorney-client relationship.

On February 14, 2014, the plaintiffs filed a complaint against the defendants in this Court, which they amended on March 20, 2014 to correct jurisdictional allegations. The amended complaint contains ten counts: legal malpractice (count I); breach of fiduciary duty (count II); common law conversion (count III); statutory conversion (count IV); unjust enrichment/restitution/forfeiture (count V); constructive trust (count VI); actual/constructive fraud (count VII); innocent misrepresentation (count VIII); silent fraud (count IX); and loss of consortium (count X).

On the defendants' motion, the Court dismissed the counts alleging unjust enrichment. Apparently due to the expense of prosecuting the legal malpractice claims (and having to prove their

case within a case) against a potentially uncollectable defendant, and in response to the defendants' motion for partial summary judgment based on the plaintiffs' failure to disclose its liability experts, the plaintiffs agreed to dismiss counts I (legal malpractice) and X (loss of consortium) of the amended complaint.

In their own motion for partial summary judgment, the plaintiffs argue that they are entitled to a judgment as a matter of law on their statutory conversion claim, because Hadden has acknowledged that he retained legal fees in excess of the amount to which he was entitled under the contingent fee agreement. The plaintiffs arrive at the amount owed by deducting from all the settlement proceeds the total costs expended, which include costs spent on the ill-fated second lawsuit. They then state that they are entitled to treble those damages per the conversion statute.

The defendants contend that there is a factual dispute on the liability claim, because, they say, knowledge is an element of statutory conversion under Michigan law, and Hadden denies that he knowingly, willfully, or wrongfully received, or aided in the concealment of embezzled or converted property. The defendants also contend that there is a factual dispute concerning the amount of defendant Hadden's alleged conversion. That argument is based on the notion that lawsuit one (which generated settlement proceeds) and lawsuit two (which generated no proceeds) must be treated separately, so that the costs incurred in the second case should not be deducted from gross proceeds received in the first case. Finally, the defendants contend that there is a factual dispute over whether treble damages should be awarded even if the defendants are liable for statutory conversion, because they believe the conversion statute leaves treble damages as a discretionary matter.

II.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Sixth Circuit has explained:

> Both claimants and parties defending against a claim may move for summary judgment "with or without supporting affidavits." Fed. R. Civ. P. 56(a), (b). Such a motion presumes the absence of a genuine issue of material fact for trial. The court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

*Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

"The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts." 576 F.3d at 558 (citing *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002)). "Once that occurs, the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Id.* (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)).

"[T]he party opposing the summary judgment motion must do more than simply show that there is some 'metaphysical doubt as to the material facts.'" *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (internal quotation marks omitted). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual

-6-

material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden of proof, summary judgment is clearly proper.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "Thus, [t]he mere existence of a scintilla of evidence in support of the [opposing party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]."  350 F.3d at 546 (quoting 477 U.S. at 252) (quotations marks omitted).

Irrelevant or unnecessary factual disputes do not create genuine issues of material fact.  *St. Francis Health Care Centre v. Shalala*, 205 F.3d 937, 943 (6th Cir. 2000).  A fact is "material" if its resolution affects the outcome of the lawsuit.  *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001).  "Materiality" is determined by the substantive law claim.  *Boyd v. Baeppler*, 215 F.3d 594, 599 (6th Cir. 2000).  An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party."  *Henson v. Nat'l Aeronautics & Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting 477 U.S. at 248).

When the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they also must carry that burden.  *Vance v. Latimer*, 648 F. Supp. 2d 914, 919 (E.D. Mich. 2009); *see also Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d Cir. 1992); *Stat-Tech Liquidating Trust v. Fenster*, 981 F. Supp. 1325, 1335 (D. Colo. 1997) (stating that where "the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense").  In his commentary on affirmative motions for summary judgment, Judge William Schwarzer explains:

-7-

> When the moving party bears the burden of persuasion on the issue at trial, its showing must sustain that burden as well as demonstrate the absence of a genuine dispute.  Thus, it must satisfy both the initial burden of production on the summary judgment motion — by showing that no genuine dispute exists as to any material fact — and the ultimate burden of persuasion on the claim — by showing that it would be entitled to a directed verdict at trial.

William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D.

441, 477-78 (1992) (footnotes omitted).

### A.  Statutory Conversion

Michigan Compiled Laws section 600.2919a, as amended in 2005, defines the civil claim

for statutory conversion.  The statute reads:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

Mich. Comp. Laws § 600.2919a.  Subpart (1)(b) of the statute "is not designed to provide a remedy

against the individual who has actually stolen, embezzled, or converted the property.  Indeed, the

statute carefully compartmentalizes the actions of those assisting and the actions of the principal."

*Marshall Lasser, PC v. George*, 252 Mich. App. 104, 112, 651 N.W.2d 158, 162-63 (2002).  Subpart

(1)(a) was added to the statute in 2005 to enable a plaintiff to hold a principal accountable for

conversion.

The statute does not define conversion or list the elements of an action for conversion.  The

common law supplies those elements.  The Michigan Supreme Court has defined conversion as

"'any distinct act of domain wrongfully exerted over another's personal property in denial or

-8-

inconsistent with the rights therein.'" *Dep't of Agriculture v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 13-14, 779 N.W.2d 237, 244 (2010) (quoting *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600, 606 (1992)).  "Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Id.* at 15, 779 N.W.2d at 244-45 (citing *Foremost*, 439 Mich. At 391, 486 N.W.2d at 606).

The defendants concede that Hadden retained attorney fees from the settlement with the condominium association in excess of the retainer agreement.  The retainer agreement capped attorney fees at one-third of the *net* settlement; Hadden concedes that he calculated his fees based on the *gross* settlement.  To avoid the impact of those undisputed facts, the defendants argue that summary judgment is nevertheless inappropriate because there is a genuine dispute as to whether Hadden willfully did so.  The defendants correctly note that a person cannot be held liable as an accessory to conversion under section 600.2919a(1)(b) unless that person had actual knowledge that the property was stolen.  Defs.' Resp. at 10;  *See also Echelon Homes, L.L.C. v. Carter Lumber Co.*, 472 Mich. 192, 197, 694 N.W.2d 544, 547 (2005) (holding that a person must have actual knowledge that the property was stolen, embezzled, or converted to be liable for statutory conversion under what is now Michigan Compiled Laws section 600.2919a(1)(b)).

However, the Michigan Supreme Court has held that conversion under § 600.2919a(1)(a) does not require proof of intent.  *See In re Pixley*, 456 B.R. 770, 788 (Bankr. E.D. Mich. 2011) (citing *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 Mich. N.W.2d 600, 606 (1992) ("In general, [conversion] is viewed as an intentional tort in the sense that the converter's actions are willful, although the tort can be committed unwittingly if unaware of the plaintiff's

-9-

outstanding property interest.")); *see also Bensmiller v. Elias Bros. Restaurant, Inc.*, 1997 WL 33343875, at *3 (Mich. Ct. App. Oct. 31, 1997) ("An act for conversion does not rest on the knowledge or intent of the defendant, does not require wrongful intent, and is not excused by care, good faith, or lack of knowledge."); *Attorney General v. Hermes*, 127 Mich. App. 777, 786-87, 339 N.W.2d 545, 551 (1983) (good faith is no defense to conversion); *Tidey v. McDonald*, 179 Mich. 580, 586, 146 N.W. 224, 226 (1914) ("The fact that relator acted under mistake, in ignorance of who was the actual owner, or even in the belief that the money was his own instead of that of another, does not constitute a defense in trover."); *Moore v. Andrews*, 203 Mich. 219, 233, 168 N.W. 1037, 1041 (1918) ("Mistake, or ignorance, or even belief that the money belonged to a defendant, does not constitute a defense in trover.") (internal citations and quotation marks omitted); *Gibbons v. Farwell*, 63 Mich. 344, 349, 29 N.W. 855, 857 (1886) ("The intention with which the wrongful act [of conversion] is done by which a party is deprived of his property, except when malicious, is of little consequence, provided the act is done.  It is the effect of the act which constitutes the conversion."); *but see Jackovich v. General Adjustment Bureau*, 119 Mich. App. 221, 237, 326 N.W.2d 458, 465 (1982) ("The element of intent is required to support a claim for conversion.").

Conversion is a strict liability tort:

> The foundation for the action of conversion rests neither in the knowledge nor the intent of the defendant.  It rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results.  Therefore neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance are of the gist of the action.

*J. Franklin Interests L.L.C. v. Mu Meng*, No. 296525, 2011 WL 4501841, at *9 (Mich. Ct. App. Sept. 29, 2011) (quoting *Poggi v. Scott*, 167 Cal. 372, 375, 139 P. 815, 816 (1914)).

-10-

At oral argument, the defendants argued that the plaintiffs only brought their statutory conversion claim under Michigan Compiled Laws section 600.2919a(1)(b). Although the plaintiffs disagree, they have since filed a motion for leave to file a second amended complaint. But an amendment is not necessary.

It is true that paragraph 108 of the amended complaint parrots the language of section 600.2919a(1)(b). However, the amended complaint incorporated the plaintiffs' prior allegations by reference. Paragraphs 91 and 92 of the amended complaint, which allege that Hadden converted fees from the condominium and Armstrong settlements, are sufficient to state a claim for conversion against both defendants under section 600.2919a(1)(a).

Additionally, the defendants contend that Hadden cannot be held liable for conversion because he retained excessive fees only after the settlement amount was commingled with other funds. It is true that "[t]o support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 111-12, 593 N.W.2d 595, 603 (1999) (citing *Check Reporting Services, Inc. v. Michigan Nat'l Bank-Lansing*, 191 Mich. App. 614, 626, 478 N.W.2d 893 (1991)). And money deposited in a general deposit account loses its "trust quality," so that the "commingling makes it impossible for a plaintiff who deposits this money in a general deposit account to claim conversion of money placed in the account." *Beginin v. Thomas Hospitality Grp., Inc.*, No. 317515, 2014 WL 6859292, at *2 (Mich. Ct. App. Dec. 4, 2014). Relying on those general principles, Hadden reasons that he cannot be held liable for conversion because the settlement funds were eventually transferred from the plaintiffs' client trust account to a general business account in which they were commingled with other funds. Hadden's argument defies common sense. If his position

-11-

is correct, a tortfeasor could avoid liability for conversion simply by depositing funds into a general bank account. But Hadden had an obligation to the plaintiffs to return the settlement proceeds *well before* they were commingled with other funds.

Further, Hadden appears to believe that he cannot be held personally liable for conversion because the fees were entrusted to his law firm's care rather than his personal care. But Hadden cannot hide behind his law firm. "When conversion is committed by a corporation, the agents and officers of the corporation may also be held personally liable for their active participation in the tort, even though they do not personally benefit thereby." *Citizens Ins. Co. of Am. v. Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 576, 444 N.W.2d 210, 213 (1989) (citations omitted). Hadden is the sole shareholder, officer, and director of his law firm. There is no genuine dispute that he actively participated in negotiating the settlement, depositing the funds into the client trust account, transferring those funds to the general business account, and retaining fees in excess of the retainer agreement. The defendants' argument is meritless.

The plaintiffs have shown that there is no genuine issue of material fact on the defendants' liability for statutory conversion. They are entitled to partial summary judgment on liability for that claim.

## B.  Amount Converted

The defendants contend that there is a genuine dispute of material fact concerning the amount of damages. There is no argument over the raw numbers. The first lawsuit against the condominium association and the Armstrongs generated settlement proceeds totaling $63,000. According to Hadden's affidavit, the amount of costs incurred was $14,181.78. Hadden retained fees totaling $21,000, that is, one-third of the gross settlement proceeds. The second lawsuit against

-12-

the developer, the builder, and the HVAC contractor generated no revenue, but Hadden incurred

costs of $16,997.55. He says that he paid for those costs in part from the plaintiffs' share of the

settlement proceeds he had retained from the first lawsuit.

The plaintiffs argue that the legal fees should only be calculated after the resolution of *all*

possible claims. If that argument prevails, then the amount of excess fees would be $10,393.11

(based on net proceeds of $31,820.67 [resulting from gross proceeds of $63,000 minus total costs

of $31,179.33]; generating a one-third fee of $10,606.89). By contrast, the defendants contend that

legal fees and costs should be calculated after *each* settlement. If the Court accepts that argument,

the excess fees would equal $4,727.26 (based on net proceeds of $48,818.22 [resulting from gross

proceeds of $63,000 minus costs of $14,181.78]; generating a one-third fee of $16,272.74). To

resolve this part of the dispute, we turn to the plain language of the parties' fee agreement. *See Bank*

*& Trust Co. v. Sefa*, 23 Mich. App. 423, 427, 178 N.W.2d 826, 828 (1970) (holding that "[i]n

resolving disputes between attorney and client regarding the amount of compensation due under a

written fee agreement, courts apply general rules of contract construction"); *see also Hamilton v.*

*Ford Motor Co.*, 636 F.2d 745, 748 (D.C. Cir. 1980) (observing that "[i]t is elementary that an

attorney may not seek compensation from the client in addition to that provided in the contract

between the attorney and the client").

The contingent fee agreement states:

We hereby appoint and employ Donnelly W. Hadden, P.C., attorneys at law, to bring
suit upon and to represent us in the prosecution of our claims for damages sustained
by us as a result of personal injury and/or property damage against <u>Robert Armstrong
and Amy Armstrong</u> *or any other responsible parties* concerning <u>exposure to indoor
air contamination at 235 Lakeshore Boulevard, Marquette, Michigan</u>; and we agree
to pay for that employment a contingent fee equal to 33 1/3% of the net sum
recovered from the defendant(s) *on our causes of action*, after all reasonable and
necessary advances, costs and expenses, if any, paid or incurred by Donnelly

-13-

> Hadden, P.C. for us *in connection with the preparation, prosecution and handling of said claim.*  Fee in no event to be greater than authorized by court rule.

Contingent Fee Agreement, Page ID 146 (emphasis added).  The contingent fee agreement does not say that costs and fees would be calculated after each settlement.  Instead, the agreement suggests that fees would be calculated only after the resolution of all "causes of action," by deducting from the proceeds "all reasonable and necessary advances, costs and expenses."  The agreement speaks to the plaintiffs' "claim."  And the "claim" is defined as the damages sustained by the clients from "exposure to indoor air contamination" at their condominium, for which they sought to hold accountable all "responsible parties."

Accepting Hadden's interpretation of the contingent fee agreement would alter the relationship between lawyer and client.  As all personal injury lawyers know well, the contingent fee approach to revenue-generating litigation is a risk-reward proposition.  "Clients take inherent risks in contingent fee arrangements, and their attorneys do the same."  *Ackerman v. Miotke*, No. 265004, 2006 WL 859471, at *5 (Mich. Ct. App. Apr. 4, 2006).  The fee agreement in this case held the client responsible for the payment of litigation expenses, as is typical.  However, that risk was offset by the prospect of recovery, and the promise that the lawyer would share in those expenses by calculating his fee based on *net* proceeds.  The effect of that provision was that the lawyer essentially would pay one-third of the costs from the gross recovery, and the client would pay two-thirds.  Hadden now seeks to alter that calculus — and change the risk allocation — by treating the second lawsuit (which was doomed from the start by the broad release he allowed his clients to sign) as a separate engagement, isolating the costs for that matter from the proceeds of the earlier case.  But that is not what his agreement says.  The fee agreement plainly contemplated that the

undertaking encompassed *all* causes of action against *all* parties that Hadden chose to sue. The accounting, therefore, should have been completed with that in mind.

The amount of the excess fee, and therefore the amount of money converted by the defendants is $10,393.11.

### C. Treble Damages

The plaintiffs insist that they are entitled to treble damages as a matter of right under Michigan Compiled Laws § 600.2919a(1). The defendants argue that the language of the statute is permissive ("A person damaged as a result of either or both of the following *may* recover 3 times the amount of actual damages sustained . . ."), and therefore the trier of fact has discretion to award them or not.

Because this is a diversity action, the Court must follow Michigan substantive law, as prescribed by the state's highest court. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). "Since the Michigan Supreme Court has not addressed this issue, however, [the Court] must predict how it would resolve the issue from 'all relevant data.'" *Kingsley Associates, Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Ibid.* (citing *FL Aerospace v. Aetna Casualty and Surety Co.*, 897 F.2d 214, 218-19 (6th Cir. 1990)).

In *Aroma Wines & Equipment, Inc. v. Columbia Distribution Services, Inc.*, 303 Mich. App. 441, 844 N.W.2d 727 (2013), *lv gtd on other grounds*, 497 Mich. 864, 852 N.W.2d 901 (2014), the Michigan Court of Appeals held that an award of treble damages for statutory conversion is

-15-

discretionary. The court of appeals has reached the same conclusion in at least six other unpublished

decisions. *Hoffenblum v. Hoffenblum*, No. 317027, 2014 WL 6461721 (Mich. Ct. App. Nov. 18,

2014) ("an award of treble damages is within a court's discretion"); *Pantall Gallup, LLC v. Alnouri*,

No. 314852, 2014 WL 5793945, at *18-19 (Mich. Ct. App. Nov. 6, 2014) ("The term 'may' is

permissive and indicates discretionary activity. Thus, under the language in MCL 600.2912a(1),

treble damages and attorney fees are discretionary. Accordingly, whether to award treble damages

is a question for the trier of fact.") (citations omitted); *Israel v. Putrus*, No. 316249, 2014 WL

5690511, at *4 (Mich. Ct. App. Nov. 4, 2014) ("As this Court has previously held, the decision to

award treble damages, costs, and attorney fees for statutory conversion or embezzlement under MCL

600.2919a is entirely discretionary."); *Windrush Inc. v. Vanpopering*, No. 315958, 2014 WL

2810428, at *1 (Mich. Ct. App. June 19, 2014) (noting that treble damages for statutory conversion

is discretionary); *LMT Corp. v. Colonel, L.L.C.*, No. 294063, 2011 WL 1492589, at *3 (Mich. Ct.

App. Apr. 19, 2011) ("[P]ursuant to the language in MCL 600.2919a(1), treble damages are

permissive. Therefore, the trier of fact has the discretion to decide whether to award treble damages

pursuant to MCL 600.2919a when actual damages are sustained as a result of another person,

stealing, embezzling, or converting one's property."); *Poly Bond, Inc. v. Jen Tech Corp.*, No.

290429, 2010 WL 2925428, at *4 (Mich. Ct. App. July 27, 2010) ("As the trial court concluded, the

phrase 'may recover' in MCL 600.2919a indicates that treble damages are permissive, not

mandatory. Thus, a trier of fact has discretion to decide whether to award them when a person has

sustained actual damages as a result of another person converting property, for example."); *see also*

*In re Stewart*, 499 B.R. 557, 570 (Bankr. E.D. Mich. 2013) ("Trebling isn't automatic; it is within

the Court's discretion based on what is fair under the circumstances."); *In re Killgrove*, 517 B.R.

-16-

784, 791 (E.D. Mich. 2014) (same); *In re Hamade*, No. 11-68553-WSD, 2013 WL 663736, at *9 (Bankr. E.D. Mich. Feb. 15, 2013) ("[T]reble damages are permissive. Therefore, the trier of fact has the discretion to decide whether to award treble damages") (internal citations omitted); *In re Anton*, No. 08-64144, 2013 WL 1747907, at *9 (Bankr. E.D. Mich. Apr. 12, 2013) (same).

Nevertheless, the plaintiffs contend that the Michigan Supreme Court would reach a different decision. The plaintiffs do not contest that the word "may" generally denotes discretionary activity and for good reason. It is well settled that "courts should give the ordinary and accepted meaning to the mandatory word 'shall' and the permissive word 'may' unless to do so would clearly frustrate legislative intent as evidenced by other statutory language or by reading the statute as a whole." *Browder v. Int'l Fid. Ins. Co.*, 413 Mich. 603, 612, 321 N.W.2d 668, 673 (1982) (citing *Smith v. School Dist. No. 6, Fractional, Amber Twp.*, 241 Mich. 366, 369, 217 N.W. 15 (1928)). Instead, the plaintiffs believe section 600.2919a must be read to accord to *the injured party* the discretion to seek treble damages. *Cf. In re Krupka*, 317 B.R. 432, 439 (Bankr. D. Colo. 2004) ("Because the language used speaks in terms of what the owner may recover as opposed to what the court may award, this Court does not believe that the statutory language supports the argument that discretion lies with the trial court to either award treble damages or not as it may deem appropriate.").

The plaintiffs' interpretation of the statute is a plausible reading. However, in light of the authority from Michigan's intermediate appellate court, the defendants' argument on this point must prevail. The plaintiffs contend that *Aroma* conflicts with prior published and unpublished decisions by the Michigan Court of Appeals. They refer specifically to *New Properties, Inc. v. George D. Newpower, Jr., Inc.*, 282 Mich. App. 120, 137, 762 N.W.2d 178, 189 (2009) (stating that "in accordance with MCL 600.2919a, the Kitchens are entitled to recover treble damages in addition

-17-

to their other remedies."); *Hamameh v. Gilson*, No. 317232, 2014 WL 6679261, at *18 (Mich. Ct. App. Nov. 25, 2014) (noting that "[s]tatutory conversion is governed by MCL 600.2919a, which provides treble damages when a defendant steals, embezzles, or converts a plaintiff's property or accepts such property with the knowledge it was so converted."); *Stockbridge Capital, LLC v. Watcke*, No. 313241, 2014 WL 860353, at *3 (Mich. Ct. App. Mar. 4, 2014) (affirming award of treble damages); and *Epps v. 4 Quarters Restoration, L.L.C.*, No. 305731, 2013 WL 2460119, at *5 (Mich. Ct. App. June 6, 2013) (stating that "MCL 600.2919a(1) specifically provides for treble damages in the face of such a conversion."). But none of those cases explicitly concluded that treble damages are mandatory in every case upon a finding of liability.

The plaintiffs also cite *Lane v. Ruhl*, 103 Mich. 38, 39, 61 N.W. 347, 347 (1894), in which the Michigan Supreme Court held that treble damages are automatic upon a finding of liability. But that case is not binding here because *Lane* addressed a different statute altogether. Moreover, the Michigan legislature has used explicit language in other statutes when intending to mandate treble damages. *See, e.g.*, Mich. Comp. Laws § 230.7 ("Whoever shall injure any bridge maintained at the public charge, or any public road, by drawing logs or timber on the surface of any such road or bridge, or by any other act, *shall be liable in damages to 3 times the amount of the injury*.") (emphasis added); Mich. Comp. Laws § 600.2907 ("Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, *shall be liable* to the person so arrested, attached or proceeded against, *in*

-18-

*treble the amount of the damages* and expenses which, by any verdict, shall be found to have been sustained and incurred by him.") (emphasis added). It did not do so in section 600.2919a.

The plaintiffs point out that the *Aroma Wines* case presently is pending on appeal before the Michigan Supreme Court. It does not appear that leave to appeal was granted on the issue raised by the plaintiffs here. *See Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc.*, 497 Mich. 864, 852 N.W.2d 901 (2014) (granting leave to appeal "limited to the issue of the proper interpretation of 'converting property to the other person's own use,' as used in MCL 600.2919a"). Nonetheless, if the state's highest court addresses that issue, this Court may revisit its holding. In the meantime, however, an award of treble damages under the Michigan conversion statute must be considered a discretionary decision for the trier of fact.

III.

There is no genuine fact issue on the claim by the plaintiffs against the defendants for statutory conversion, except as to the question of treble damages. The plaintiffs are entitled to a judgment as a matter of law that the defendants converted money in the form of excess attorney's fees retained totaling $10,393.11. The plaintiffs have abandoned their claims for legal malpractice. Therefore, the defendants' motion for summary judgment on those counts and to strike the expert witnesses is moot.

Accordingly, it is **ORDERED** that the plaintiffs' motion for partial summary judgment [dkt. #26] is **GRANTED IN PART AND DENIED IN PART**. The plaintiffs are entitled to a judgment against the defendants of liability for converting $10,393.11.

It is further **ORDERED** that the plaintiffs' motion for leave to file a second amended complaint [dkt. #34] is **DENIED**.

-19-

It is further **ORDERED** that the defendants' motion for partial summary judgment and to strike expert witnesses [dkt. #38] is **DENIED as moot**.

It is further **ORDERED** that the defendants' motion *in limine* to exclude evidence offered to prove legal malpractice or loss of consortium [dkt. #43] is **DENIED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   June 2, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 2, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI