UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HUNT and
CAROL SANTANGELO,

        Plaintiffs,                  Case Number 14-10713
                                                                 Honorable David M. Lawson

v.

DONNELLY HADDEN, and
DONNELLY W. HADDEN, P.C.,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART
MOTION FOR COSTS AND ATTORNEY'S FEES**

The Court entered judgment in this case on October 23, 2015, finding the defendants liable to the plaintiffs for statutory conversion under Michigan Compiled Laws § 600.2919a. The plaintiffs have filed a timely motion for attorney's fees and costs under Federal Rule of Civil Procedure 54(d). They also ask the Court to award prejudgment interest. The defendants oppose the motion, asserting that an award of attorney's fees under the statute is discretionary and the Court should exercise its discretion and not award fees, the amount of fees requested is excessive, costs (other than filing fees) should not be awarded, and prejudgment interest should be limited. The motion papers adequately set forth the relevant facts and law, and oral argument will not aid in the disposition of the motion. Therefore, it is **ORDERED** that the motion be decided on the papers submitted, and the hearing scheduled for February 3, 2016 is **CANCELLED**. *See* E.D. Mich. LR 7.1(f)(2). The plaintiffs have demonstrated their entitlement to attorney's fees and certain costs, including prejudgment interest in an amount to be determined. Therefore, the Court will grant the plaintiffs' motion in part.

I. Background

The facts of the case are well known to the parties. A brief summary will suffice here. Plaintiff C. David Hunt, a neurosurgeon, and his wife, Carol Santangelo, hired defendant Donnelly Hadden, an attorney, to represent them in an action to recover damages Hunt suffered when the condominium they leased in Marquette, Michigan was found to have vented carbon monoxide fumes into the living quarters. Dr. Hunt suffered from prolonged exposure to toxic fumes that had been circulating throughout the condominium; the exposure to the toxins left him permanently disabled and unable to work.

Hadden sued the condominium owners and the condominium association on behalf of Hunt and Santangelo. He negotiated a settlement of that case, but retained more of the settlement proceeds than his fee agreement allowed. He also counseled his clients to sign a broad release that had the effect of barring any further action against the developer, the builder, and the HVAC contractor, who, presumably, were the primary targets (and perhaps the deeper pockets) of the liability claim. When this came to light, the plaintiffs sued Hadden and his professional corporation in this court by filing an eleven-count complaint alleging various theories of liability that focused on legal malpractice, conversion, fraud, and loss of consortium. After early efforts to resolve the dispute proved fruitless, the case was robustly litigated by the defendants. At some point, after it became known that the defendants had no insurance and their collectability was in doubt, the plaintiffs abandoned their legal malpractice claim (most likely due to the expense of having to obtain expert witnesses to prove the case within a case) and focused on the conversion claims. The Court granted the plaintiffs partial summary judgment on the statutory conversion claim, and the parties

eventually stipulated to the amount of damages. Judgment in the amount of $10,028.44 was entered on October 23, 2015.

The plaintiffs now seek attorney's fees of $146,756.25, costs of $642.27, prejudgment interest at five percent from the day of the conversion to the day of judgment, and a declaration that they may seek additional attorney's fees following the appeal. Hadden argues that attorney's fees cannot be awarded unless the plaintiffs show that the defendants acted willfully and wantonly. He also maintains that the hourly rate used by the plaintiffs' attorney in computing his fee request — $375 — is excessive, and the amount of time expended is unreasonably overstated. Hadden also insists that the plaintiffs cannot recover any costs other than the filing fee, and prejudgment interest cannot be awarded in a motion filed under Rule 54.

## II. Attorney's Fees

In a diversity action such as this, when considering an award of attorney's fees, the Court must apply state substantive law and federal procedural law. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 528 (6th Cir. 2002) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)); *see also Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 260 n.31 (1975) ("In an ordinary diversity case where the state law does not run counter to a valid federal statute, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 52 (1991). Rule 54(d) states that requests for attorney's fees must be made by motion, which must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award." Fed. R. Civ. P. 54(d)(2)(A), (2)(B)(ii).

Michigan's statutory conversion statute expressly authorizes recovery of attorney's fees when a plaintiff establishes a violation of the statute. The statute states:

> A person damaged as a result of [statutory conversion] may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees.

Mich. Comp. Laws § 600.2919a(1).

### A. Entitlement to Attorney's Fees

The defendants point out that because the statute allows that a plaintiff "may" recover attorney's fees, a fee award is discretionary. Case law supports that view. *See Aroma Wines & Equip., Inc. v. Columbian Distribution Servs., Inc.*, 303 Mich. App. 441, 449, 844 N.W.2d 727, 732 (2013), *aff'd in part and rev's on other grounds* 497 Mich. 337, 871 N.W.2d 136 (2015) (noting that under section 600.2912a(1), "treble damages and attorney fees are discretionary").

The defendants insist that the plaintiffs are not entitled to attorney's fees because the defendants did not act willfully or wantonly in converting funds, contending that the plaintiffs must make the same case for attorney's fees as they would have had to demonstrate to recover treble damages. That argument is not persuasive. "[T]reble damages are in their nature punitory." *Shepard v. Gates*, 50 Mich. 495, 498, 15 N.W. 878, 879 (1883). Attorney's fees under Michigan law, on the other hand, are generally compensatory in nature. *See McAuley v. Gen. Motors Corp.*, 457 Mich. 513, 520, 578 N.W.2d 282, 285-86 (1998) ("That an award of attorney fees is typically compensatory in nature is illustrated by the well-established body of law holding that a litigant representing himself may not recover attorney fees as an element of costs or damages under either a statute or a court rule because no attorney fees were incurred."). The "purpose of compensatory damages is to make the injured party whole for the losses actually suffered." *Ibid.* (citing *Stilson*

*v. Gibbs*, 53 Mich. 280, 284, 18 N.W. 815 (1884). A prevailing plaintiff should ordinarily be entitled to attorney fees upon a showing that "he has incurred such fees." *Ibid.*

The defendants also make reference to the American rule, which assigns the burden of attorney's fees to the respective litigants, "unless a statute, court rule, or common-law exception provides the contrary." *Nemeth v. Abonmarche Dev., Inc.*, 457 Mich. 16, 37–38, 576 N.W.2d 641 (1998). However, because section 600.2919a(1) expressly allows for an award of attorney's fees, that argument has no traction.

The defendants also argue that the plaintiffs should not receive attorney's fees because their recovery was *de minimis*. The defendants state that they made a $10,000 offer of judgment a year ago, and the judgment in this case was only $28.44 more than the offer. However, the $10,000 that the defendants offered to pay included costs and attorney's fees. Accepting such an offer after spending more than 300 hours litigating this case for the better part of a year would have been woefully inadequate. The plaintiffs argue that this offer of judgment was nothing more than a tactic to put the plaintiffs at greater risk in this case, which appears to be a plausible conclusion in light of the defendants' proclivity of contesting every legal point to its ultimate conclusion, regardless of the strength of their position. The plaintiffs eventually recovered the full amount they were seeking on the statutory conversion claim. They have shown that they are entitled to a discretionary award of attorney's fees under section 600.2929a(1).

B. Amount of Attorney's Fees

When determining an amount of a reasonable attorney's fee, federal courts generally begin by calculating the "lodestar" (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate), and then reduce or augment that amount by

considering other case-specific factors. *Hensely v. Eckerhart*, 461 U.S. 424, 433-37 (1983) (noting that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate"). Michigan courts follow a similar approach. *See Smith v. Khouri*, 481 Mich. 519, 530-31, 751 N.W.2d 472, 479 (2008). After determining the lodestar, Michigan courts then apply the factors outlined in *Wood v. DAIIE*, 413 Mich. 573, 321 N.W.2d 653 (1982), and Michigan Rule of Professional Conduct 1.5(a) to determine if they warrant an increase or decrease in the base number. The factors considered in *Wood* are:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Wood*, 413 Mich. at 588, 321 N.W.2d at 661. The factors in Professional Conduct Rule 1.5(a) are largely the same. Those factors are not exclusive, and "courts should consider any additional relevant factors." *Smith*, 481 Mich. at 530, 751 N.W.2d at 479.

### 1. Hourly Rate

Plaintiffs' counsel asks the Court to apply an hourly rate of $375. The defendants, predictably, argue that the rate is too high.

In determining an hourly rate, the touchstone is reasonableness, which the party seeking the attorney's fees bears the burden of establishing. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437). Reference to the prevailing market rates in the relevant community usually suffices. *Smith*, 481 Mich. at 531, 751 N.W.2d at 480. "'The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question.'" *Ibid.* (quoting *Eddleman v. Switchcraft, Inc.*, 965

F.2d 422, 424 (7th Cir. 1992) (citation and quotation marks omitted). The attorney should submit his own affidavit documenting his skill, experience, and reputation, as Michael Curhan, plaintiffs' counsel, has done here, and that should be augmented by additional data. *Ibid.* "The State Bar of Michigan, as well as other private entities, can provide a valuable service by regularly publishing studies on the prevailing market rates for legal services in this state." *Ibid.*

The parties agree that the State Bar of Michigan 2014 economics of law practice summary report is informative on the issue of reasonable attorney's fees. The plaintiffs point to 2013 billing rates from the 75th percentile, where he believes his experience places him, recounting hourly rates at (a) $340 per hour for firms the size of Mr. Curhan's firm (21-50); (b) $345 per hour for civil litigation practitioners; (c) $325 per hour respectively for Oakland and Wayne County attorneys; and (d) $276 per hour for attorneys in practice 31-35 years. Rates for attorneys in the 95th percentile were (a) $520 per hour for firms the size of Mr. Curhan's firm; (b) $500 per hour for civil litigation practitioners; (c) $500 per hour respectively for Oakland County and Wayne County attorneys; and (d) $515 pre hour for attorneys in practice for 31–35 years.

In contesting the $375-per-hour rate, the defendants make the unusual argument of comparing Mr. Curhan's hourly rate to the hourly rates of municipal attorneys paid through a self-insurance pool ($135 per hour), and appointed counsel in federal capital criminal cases ($181 per hour). The rates noted by the defendants are well below the median market rates for all private attorneys in Oakland and Wayne Counties ($250 per hour), the relevant markets in this case. Moreover, those rates do not accurately reflect the private legal market. It is generally thought that a reasonable hourly rate "'is one that is adequate to attract competent counsel, but [does] not produce windfalls to attorneys.'" *Lee v. Thomas & Thomas*, 109 F.3d 302, 307 (6th Cir. 1997)

(quoting *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)). Market rates provide a valid benchmark for that measure.

The defendants also note that this Court authorized a rate of $250 per hour in *Pucci v. Somers*, 834 F. Supp. 2d 690, 701-02 (E.D. Mich. 2011), a civil rights case. But *Pucci* is not informative here, because both attorneys there were less experienced than Mr. Curhan, the fees dated back to 2008, and the attorneys previously had asked for an hourly rate of no more than $250. Although the defendants argue that Mr. Curhan's fees should be no more than the median rate for attorneys in Oakland county, his experience and skill justify a higher rate.

Mr. Curhan has 32 years of experience in civil litigation, he has been lead counsel at Lipson, Neilson, Cole, Seltzer & Garin for the last 22 years, and he has been recognized for his skill by the legal community. Attorneys with comparable skill and experience as Mr. Curhan regularly command rates in the upper quartile in the State Bar of Michigan 2014 report. The reported rates are comparable to the rates sought by Mr. Curhan, and the report serves as a guidepost against which to measure a reasonable rate. The rates in the upper quartile range from $340 to over $500 an hour. Mr. Curhan's stated rate of $375 is on the lower side of that range and is reasonable in light of his experience and skill.

## 2. Time Spent

Plaintiffs' counsel submitted detailed billing records documenting 364.70 hours of attorney time in prosecuting the relevant claims in this case. He stated that he spent *more* time on the case itself — 155.15 more hours, to be exact — but he is not claiming that time because it did not relate to the conversion claim. The defendants argue that the amount claimed is excessive for a straightforward conversion case, and they specifically challenge eight instances where they believe

fees are not warranted. The parties have created a sufficient record on that score; an evidentiary hearing is not needed to determine the issue. *See Head v. Phillips Camper Sales & Rental, Inc.*, 234 Mich. App. 94, 113, 593 N.W.2d 595, 604 (1999) (citing *Giannetti Bros. Constr. Co. v. Pontiac*, 175 Mich. App. 442, 450, 438 N.W.2d 313, 316 (1989)).

*First*, the defendants take exception to 17.3 hours billed on November 28, 2014 for research on the meaning of the word "may." The defendants contend the word "may" can be researched in six minutes by the use of a dictionary. But the defendants mischaracterize the point of the plaintiffs' research. The plaintiffs did not question that the word "may" generally denotes discretionary authority. Instead they were looking at whether Michigan Compiled Laws § 600.2919a must be read to accord to *the injured party* the discretion to seek treble damages. Although the Court ultimately disagreed with the plaintiffs' interpretation of the statute, it is a plausible reading and not as trivial as the defendants suggest, and there was little guidance in the case law on the subject.

*Second*, the defendants argue that the plaintiffs' attorney billed twice for the exact same services five times between September 1, 2015 and September 6, 2015. Upon review of the billing records, it does appear that there is a clerical mistake regarding 14.1 hours of time, and therefore the duplicate time will be excluded.

*Third*, the defendants dispute billing for the subpoena and review of documents produced by Karen Christensen, a former associate attorney of defendant Donnelly W. Hadden, PC. The defendants argue Ms. Christensen did not sign any pleadings in the underlying cases nor have any communications with the plaintiffs, and therefore no basis has been shown for spending upwards of seven hours on this item. However, it is common practice for attorneys, and even law students,

who have not signed pleadings or appeared in cases, to do work on a file under a supervising attorney. Inquiring into the records of an associate at Donnelly W. Hadden, PC is reasonable.

*Fourth*, the defendants contend that the plaintiffs' attorney billed 37.8 hours for working on a brief in opposition to the defendants' motion for partial summary judgment. They object to the time spent because the motion was based on the first amended complaint, which included eight counts. The defendants argue that attorney's fees may be awarded only for time spent on the statutory conversion claim, the only claim upon which the plaintiffs recovered. However, the opposing brief focused mainly on the defendants' statute of limitations and equitable tolling arguments. The plaintiffs dedicated very little energy to specific counts, and to the extent they did, it was a brief recitation of the law. The time spent on the brief opposing the defendants' motion for partial summary judgment is reasonable.

*Fifth*, the defendants dispute the time plaintiffs' counsel spent communicating with the Attorney Grievance Commission ("AGC") regarding Mr. Hadden. That contact, however, resulted in a letter outlining why the AGC believed that an affidavit filed by Mr. Hadden in this case was false because it was not supported by the bank records. It appears that because of that letter, Mr. Hadden was prompted to file a corrected affidavit. The plaintiffs could have conducted an independent audit of Mr. Hadden's bank records and made the same findings; however, that may have resulted in more than eight hours of billable time. If anything, the AGC contact saved time and resources. The time spent communicating with the AGC and reviewing its letter is reasonable.

*Sixth*, the defendants argue that the plaintiffs' attorney conducted duplicative work by searching for opinions by this Court addressing treble damages and attorney's fees. The defendants again mischaracterizes the research. On October 16, 2014, plaintiffs' counsel conducted research

concerning elements of statutory conversion, treble damages, and attorney's fees, as well as looking for opinions by this Court addressing the issues. Those issues were novel and the case law provided little guidance. The issues also were the subject of supplemental briefing that the Court requested. On September 4, 2015, plaintiffs' counsel conducted research on, among other things, Rule 54 motions and this Court's treatment of attorney's fees requests. Those items address discrete research items, and the work was performed almost a year apart. There is little connection between the two billed items, and they otherwise are reasonable.

*Seventh*, the defendants argue that beginning on September 4, 2015, the plaintiffs' attorney intermittently charged 38.5 hours for ministerial tasks, such as computing his billable hours. The defendants do not direct the Court to the precise entries, so it is difficult to replicate the defendants' calculations; however, the entries appear to be centered on preparing the motion for attorney's fees. Preparing and drafting a motion is not ministerial work. The items are appropriate and reasonable.

*Eighth*, the defendants direct the Court to a number of billed items that they argue are in error. The plaintiffs provided two exhibits detailing the hours billed in this case. Exhibit 3 details all hours billed in this matter, and Exhibit 4 details hours which have either been excluded or discounted because the hours address claims that were not part of the judgment. The Exhibit 4 total is then deducted from the Exhibit 3 total to determine the final amount of billed hours.

For one of the dates the defendants reference, April 25, 2014, there is an entry for 3.4 hours on both exhibits. In Exhibit 4, the entry states that the time was reduced by 50% to reflect time not allocated to the statutory conversion claim. In order to achieve the discount, the billing rate is reduced by half to $187.50 so that when it is deducted from Exhibit 3, a 50% reduction occurs from the total. The defendants have listed six dates, which they believe should be disallowed, but they

have provided no basis for doing so. Based on a review of the entries, the time charged reasonably appears to address matters related to the statutory conversion claim. The defendant has not furnished any information justifying additional discounts that should have been made from Exhibit 3.

The defendants have identified 14.1 hours of time which are likely duplicative. Plaintiffs' counsel has averred that the time charged to discovering and prosecuting the conversion claim amounts to "364.70 hours." Mot. for Atty.'s Fees, Ex. 1 ¶ 11. Plaintiffs' counsel believes that equates to attorney's fees of $146,756.25, but at his requested hourly rate of $375, that total does not compute. (364.7 x $375 = $136,762.50). Deducting the duplicate amount results in a reasonable amount of time spent on the relevant claim of 350.6 hours. At the hourly rate of $375, the lodestar is $131,475.00.

### 3. *Wood* Factors

The defendants argue that some of the *Wood* factors apply, conceding that the case presented novel legal questions. But they argue that this case did not require nearly the expenditure of time or money that would usually be required in a fully litigated tort case. This case certainly could have been resolved more quickly, but the protraction was not the plaintiffs' doing. Instead, the case was prolonged by what the plaintiffs have characterized aptly as a "scorched earth" defense. Basic facts were contested, and every legal point was litigated. The defendants certainly had a right to put the plaintiffs to their proofs. But they should not now be heard to complain about the amount of time spent in doing so.

The defendants also argue the fee agreement was likely a contingency agreement, so the attorney must have been aware he was accepting a high degree of risk. True enough. "[A]s all

personal injury lawyers know well, the contingent fee approach to revenue-generating litigation is a risk-reward proposition." *Sykes v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ---, 2015 WL 7008572, at *3 (E.D. Mich. Nov. 12, 2015) (citing *Ackerman v. Miotke*, No. 265004, 2006 WL 859471, at *5 (Mich. Ct. App. Apr. 4, 2006)). But that reality adds little to the determination of a reasonable fee in *this* case.

The defendants also argue that this case did not prevent the plaintiffs's attorney from taking other cases. That appears to be true, since the plaintiffs' lawyer is part of a firm with 21 to 50 other attorneys. However, a lawyer turning away other work is usually a justification for *increasing* the lodestar amount. The opposite circumstance does not justify reducing a fee below an attorney's customary billing rate.

The defendants argue that the results obtained in the case were minuscule, especially in light of the plaintiffs' failure to accept the $10,000 offer of judgment. However, as noted above, the offer of judgment was insufficient to warrant acceptance. The plaintiffs' cause of action included the right to seek attorney's fees, which by that time had become substantial. The plaintiffs voluntarily pared down their case against the defendants and pursued a claim that appeared to be manifest. They asked for an expedited hearing on their own motion for partial summary judgment, expressing a belief (to which the defendants subscribed) that a quick ruling likely would result in a settlement. *See* dkt. #29. Then the plaintiffs walked away from their claim for treble damages, presumably just to get the case over with. But that was not to be. The amount of the offer of judgment would have been swallowed up by the attorney's fees reasonably generated by plaintiffs' counsel. The converted amounts perhaps were not great, but the result was full value. This case was decided on the plaintiffs' motion for partial summary judgment. No reasonable jury could have found for the

defendants, and the defendants could have resolved this case much earlier and for far less. The cause of the protracted litigation rests with the defendants, and the fees and costs incurred by the plaintiffs were reasonable under the circumstances. The *Wood* factors do not warrant any adjustment of the lodestar.

### III.  Costs

Under Rule 54(d), "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The plaintiffs plainly were prevailing parties. However, to recover costs, the plaintiffs generally must apply to the Clerk of Court, and then to the Court if they are not satisfied with the Clerk's decision. *Ibid.* ("The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action."). Under this district's local rule, "[t]he clerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the Court's web site." E.D. Mich. LR 54.1.

There is no record of the plaintiffs filing a bill of costs with the Clerk of Court, or any ensuing decision by the Clerk. However, in this case, the parties stipulated that after entry of judgment, "Plaintiffs shall be permitted to seek recovery of their reasonable attorney fees and costs per Mich. Comp. Laws §2919a, by filing a motion as prescribed by Fed. R. Civ. P. 54(d)." Stipulation [dkt. #63] ¶ 3. Because the parties have agreed to a different procedure, the Court will honor it.

The plaintiffs seek costs for a filing fee, photocopying, postage, and travel related expenses totaling $642.27. The defendants contend that only the filing fee is an allowable cost. For the reasons discussed below, the Court agrees.

The plaintiffs' entitlement to costs in this case is based on multiple grounds. They are entitled to costs as prevailing parties under Rule 54(d)(1) (stating that " costs . . . should be allowed to the prevailing party"). In addition, Michigan's conversion statute states that "[a] person damaged as a result of [statutory conversion] may recover . . . costs . . . ." Mich. Comp. Laws § 600.2919a(1).

The costs allowed under Rule 54(d) are those outlined in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("[Section] 1920 defines the term 'costs' as used in Rule 54(d)."). Those costs include filing and service fees ("Fees of the clerk and marshal"), and "costs of making copies of any materials where the copies are necessarily obtained for use in the case."  28 U.S.C. § 1920(1) & (4). However, the plaintiffs have not itemized any photocopying costs. *See* Mot. for Atty.'s Fees, Ex. 6. Costs for travel and postage are not authorized by the federal statute.

The costs referenced in the Michigan statute, section 600.2919a(1), presumably refer to those allowed in state court actions. Those are listed in Michigan Compiled Laws § 600.2405, but the list does not include travel or postage expenses.

The plaintiffs cite *E.E.O.C. v. Cintas Corp.*, No. 04-40132, 2011 WL 3359622, at *9 (E.D. Mich. Aug. 4, 2011), in support of their argument that travel expenses adequately documented and reasonable are awardable because those costs typically are passed on to a fee-paying client. However, the cost order in that case was vacated by the court of appeals, *see Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012), and therefore the case provides no help to the plaintiffs.

The plaintiffs are entitled to costs for the filing fee in the amount of $400.

IV. Prejudgment Interest

The plaintiffs seek prejudgment interest on the judgment beginning from July 2, 2010, one of the dates the defendants converted funds, to the day judgment was entered, at the rate of 5% compounded annually. The plaintiffs also seek prejudgment interest on the attorney's fee award from the date the complaint was filed to the judgment date. The defendants argue that Rule 54 has no provision for awarding prejudgment interest.

"In diversity cases in this Circuit, federal law controls postjudgment interest but state law governs awards of prejudgment interest." *F.D.I.C. v. First Heights Bank*, FSB, 229 F.3d 528, 542 (6th Cir. 2000) (citing *Clissold v. St. Louis–San Francisco Rwy. Co.*, 600 F.2d 35, 39 n.3 (6th Cir. 1979)).

Prejudgment interest in Michigan is governed by Michigan Compiled Laws § 600.6013, which allows "interest on a money judgment recovered in a civil action . . . calculated on the entire amount of the money judgment, including attorney fees and other costs." Mich. Comp. Laws § 600.6013(8), Michigan courts recognize two forms of prejudgment interest: one form is an element of damages, and the other is allowed as a matter of course by statute. *See, e.g., Shekoohfar v. La Rosa*, No. 316702, 2015 WL 340184, at *5 (Mich. Ct. App. Jan. 27, 2015). Under section 600.6013(8), the plaintiffs would be entitled to prejudgment interest from the commencement of this action — February 14, 2014 — through the date judgment was entered — October 23, 2015, on the total judgment, including attorney's fees and costs, at the rate prescribed by the Michigan statute.

Prejudgment interest may be characterized as a form of "costs"; the statute refers to awarding prejudgment interest after calculating "other" costs. Mich. Comp. Laws § 600.6013(8). And the conversion statute authorizes an award of "costs" to an aggrieved party. Mich. Comp. Laws §

600.2919a(1). It is true that Rule 54(d) does not address prejudgment interest. But in this case, the parties stipulated that the plaintiffs could "seek recovery of their reasonable attorney fees *and costs* per Mich. Comp. Laws §2919a" by filing a motion under Rule 54(d). Stipulation [dkt. #63] ¶ 3. That is what the plaintiffs did here, as authorized by the parties' stipulation. The statutes cited above give the plaintiffs a clear right to prejudgment interest, and the Court therefore will award it.

The problem presented, however, is that the plaintiffs have not furnished sufficient information for the Court to determine an amount. The Michigan statute states that the interest rate shall be "equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually." Mich. Comp. Laws § 600.6013(8). The plaintiffs seek interest from the date of the first conversion of funds at a rate of five percent, but they have not cited any authority supporting that position. The Court will permit the plaintiffs to furnish supplemental information establishing the proper interest rate for the correct period noted above and calculate the amount "on the entire amount of the money judgment, including attorney fees and other costs." *Ibid.* Perhaps the parties might even agree on the calculation.

V. Post Appeal Costs and Attorney's Fees

The plaintiffs ask the Court to order that they may seek post-appeal attorney's fees and costs, citing *New Properties, Inc. v. George D. Newpower, Jr., Inc.*, 282 Mich. App. 120, 141, 762 N.W.2d 178, 191 (2009) (concluding that Mich. Comp. Laws § 600.2919a permits the recovery of post-judgment fees related to appeal). The defendants argue summarily that this is a matter for the appellate courts. Neither party has developed their arguments, and the Court finds no basis to issue an advisory order "preserving" the plaintiffs' "right" to seek additional costs, including attorney's

fees.  If the plaintiffs prevail on appeal, they may request relief from the court of appeals under Federal Rule of Appellate Procedure 39.

## VI.  Conclusion

The plaintiffs are entitled to attorney's fees and certain costs in the action, including prejudgment interest.  The plaintiffs must supplement their request for prejudgment interest with appropriate data and calculations.  They are not entitled to an order preserving their rights to seek additional costs, but may seek such relief as the rules allow.

Accordingly, it is **ORDERED** that the plaintiffs' motion for costs and attorney's fees [dkt. #69] is **GRANTED IN PART**.

It is further **ORDERED** that the plaintiffs shall recover from the defendants attorney's fees of $131,475, costs of $400, and prejudgment interest to be determined.

It is further **ORDERED** that if the plaintiffs choose to pursue their request for prejudgment interest, they must furnish **on or before February 16, 2016** a calculation of the proper interest rate according to the formula set out in Michigan Compiled Laws § 600.6013(8) together with appropriate supporting data, and the total amount of prejudgment interest claimed, with supporting calculations.  If the defendants dispute the amount claimed, they must file their objections, with their competing calculations and supporting date, **on or before February 23, 2016**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   February 2, 2016

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 2, 2016.

        s/Susan Pinkowski
        SUSAN PINKOWSKI